JS-6

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 50053 | **DATE** | 6/2/2004 |
| **CASE TITLE** | | Sterson vs. Doe | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  For the reasons stated on the reverse memorandum and opinion, the court grants defendants' motion to dismiss and dismisses this cause in its entirety.

(11) ■ [For further detail see order on the reverse side of the original minute order.]

| | No notices required, advised in open court. | | number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | 6-3-04 date docketed | |
| | Notified counsel by telephone. | | | 21 |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | 6-2-04 date mailed notice | |
| | Copy to judge/magistrate judge. | | | |
| 1c courtroom deputy's initials | | Date/time received in central Clerk's Office | mailing deputy initials | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Eric Sterson, on behalf of himself and a proposed class and sub-class of persons who currently are or who will become incarcerated in Illinois correctional facilities for felony convictions, has filed a pro se complaint under 28 U.S.C. §§ 1983 and 1985 against defendants, the Director of the Illinois State Police and the Director of the Illinois Department of Corrections, alleging that Public Act 92-0289 ("the Act") violates both his Fourth Amendment right to be free from unreasonable search and seizure and the Ex Post Facto clause of the United States Constitution. The court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3). Before this court is defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

The Act amended 730 ILCS 5/5-4-3 to require that all persons convicted of a felony under Illinois law on or after August 22, 2002, and all individuals incarcerated in a facility of the Illinois Department of Corrections on or after August 22, 2002, must submit a DNA specimen prior to his or her final discharge, release on parole or mandatory supervised release. 730 ILCS 5/5-4-3. Plaintiff seeks to enjoin defendants from enforcing any rule, regulation or policy stemming from the Act and requests an order declaring the Act unconstitutional.

When ruling on a Rule 12(b)(6) motion to dismiss, a court must accept all facts alleged in the complaint as true and must resolve all reasonable inferences in favor of the plaintiff. Jacobs v. City of Chicago, 215 F.3d 758, 765 (7th Cir. 2000). A court may grant a motion to dismiss for failure to state a claim on which relief can be granted. Ledford v. Sullivan, 105 F.3d 354, 357 (7th Cir. 1997).

This court finds that plaintiff has failed to state a claim on which relief could be granted because controlling law in the Seventh Circuit rejects both plaintiff's Fourth Amendment and Ex Post Facto claims.

In general, the Fourth Amendment rule is that a search must be based on individualized suspicion to be reasonable. City of Indianapolis v. Edmond, 531 U.S. 32, 37 (2000). There are, however, limited exceptions to this rule, including the "special needs" doctrine, which permits suspicionless searches where the program is designed to serve special needs beyond the normal need for law enforcement. Edmond, 531 U.S. at 37. A special needs exception will not be recognized where the search is designed primarily to pursue the government's general crime control ends. Edmond, 531 U.S. at 43.

In a recent decision, the United States Court of Appeals for the Seventh Circuit rejected a prisoner's claim that Wisconsin's mandatory DNA collection and data storage law, which operates in the same manner as the Illinois public act at issue in this case, was an unconstitutional violation of his Fourth Amendment right to be free from unreasonable search and seizure, and held that the law could withstand constitutional attack under the special needs doctrine. Green v. Berge, 354 F.3d 675, 679 (7th Cir. 2004). See WIS. STAT. ANN. § 165.76, 730 ILCS 5/5-4-3. Noting that the majority approach to such challenges has almost uniformly been to reject them, Green, 354 F.3d at 676, the court agreed with and adopted the reasoning applied in Shelton v. Gudmanson, 934 F. Supp. 1048 (W.D. Wis. 1996), in which the district court held that although DNA testing of inmates ultimately serves a law enforcement goal, it seems to fit within the special needs analysis the Supreme Court has developed for drug testing and searches of probationers' homes, since it is not undertaken for the investigation of a specific crime. Green, 354 F.3d at 678. See also United States v. Kimler, 335 F.3d 1132, 1146 (10th Cir. 2003) (holding that the federal DNA Act is a reasonable search and seizure under the special needs exception to the Fourth Amendment's warrant requirement because the desire to build a DNA database goes beyond the ordinary law enforcement need); Roe v. Marcotte, 192 F.3d 72, 79 (2nd Cir. 1999) (concluding that a reasoned interpretation of the special needs doctrine supports the constitutionality of Connecticut's DNA statute as applied to convicted sex offenders); Cf. United States v. Sczubelek, 255 F. Supp. 2d 315, 319 (D. Del. 2003) (noting that mandatory DNA laws are constitutional under either the special needs doctrine or the Fourth Amendment's reasonableness standard analysis).

In his response to defendants' motion to dismiss, plaintiff contends that Green is not applicable because the Seventh Circuit erred in its "special needs" analysis, citing the United States Supreme Court's decisions in Edmond and Ferguson v. City of Charleston, 532 U.S. 67, 79-80 (2001), to support his argument. However, as the Seventh Circuit clearly distinguished these cases from Green, plaintiff's reliance on them is misplaced.

Edmond stands for the proposition that where the primary purpose of a search is mere ordinary law enforcement, the special needs doctrine does not apply and the Fourth Amendment requires individualized suspicion of wrongdoing. Edmond, 531 U.S. at 44. The Seventh Circuit noted that although the primary purpose of the Edmond search was to determine if a vehicle driver was then and there engaged in illegal drug activity, meaning the search was designed to produce evidence of a specific criminal act committed by the person being searched, the purpose of a DNA law is not to search for evidence of criminal wrongdoing, but rather to obtain reliable proof of a felon's identity. Green, 354 F.3d at 678. DNA itself provides no evidence that a person has committed a crime, but rather provides evidence only of his genetic code. See Sczubelek, 255 F. Supp. 2d at 322. Furthermore, given that felons' fingerprints are routinely collected and kept on file for use in solving future crimes, the collection and use of DNA, which differs from fingerprinting only in terms of the method used to obtain the information, is, for prisoners, a distinction without importance. Green, 354 F.3d at 680 (Easterbrook, J., concurring).

The Seventh Circuit also distinguished Ferguson from cases involving mandatory DNA collection laws. In Ferguson, the Supreme Court looked at the primary purpose behind the search to determine if the government's "special need" was divorced from its general interest in law enforcement. Ferguson, 532 U.S. at 79-80. In ruling that the search was primarily intended to further the city's general interest in law enforcement, the Court noted that the plaintiffs had not clearly understood the purpose of the tests to which they had submitted or the ultimate use of their test results by third persons. Ferguson, 532 U.S. at 78. In the case of DNA collection laws, on the other hand, the plaintiffs have no misunderstanding about the purpose of the DNA test or the potential use of their test results. Green, 354 F.3d at 679.

In his response to defendant's motion to dismiss, plaintiff argues that at this stage, there is no evidence of a "special need" for the collection of DNA from him and prisoners like him, who were incarcerated prior to the enactment of Public Act 92-0289. However, the Seventh Circuit has held that mandatory DNA collection laws for prisoners withstand constitutional attack under the firmly entrenched special needs doctrine. Green, 354 F.3d at 679, including application of the law to persons convicted of felonies after the date of the law's enactment and to those already incarcerated at that time. Moreover, as plaintiff correctly noted in his complaint, section 5/5-4-3, which codifies the Act, provides that DNA collected pursuant to the Act shall be used only for valid law enforcement identification purposes, technology validation purposes or assisting in the defense of the criminally accused, all uses that implicate special needs beyond those of ordinary law enforcement. 730 ILCS 5/5-4-3(f).

To the extent plaintiff has argued briefly and without citation of authority that Green was in error because it failed to consider the forcible taking of a DNA sample from a recalcitrant inmate, this argument presents no meritorious issue under the Fourth Amendment as a forcible taking of a DNA sample, without more, would not be unreasonable.

Seventh Circuit law also supports this court's dismissal of plaintiff's Ex Post Facto claim. The Ex Post Facto Clause of the United States Constitution, cited in Article 1, § 10, prohibits states from retroactively altering the definition of crimes or increasing the punishment for criminal acts. Gilbert v. Peters, 55 F.3d 237, 238 (7th Cir. 1995). It does not prohibit every alteration in a prisoner's confinement that may work to his disadvantage, but only those measures that are both retroactive and punitive. Gilbert, 55 F.3d at 238.

Gilbert holds that laws that mandate the collection of blood specimens to assist in law enforcement are not penal or punitive in nature, even as applied to inmates who were in prison at the time of the law's enactment but whose convictions occurred prior to that time, as the sample is collected and analyzed for the sole purpose of establishing a data bank which will aid in future law enforcement. Gilbert, 55 F.3d at 239. Furthermore, any sanctions an inmate incurs for refusing to comply with valid prison regulations are also constitutional because such sanctions result from his refusal to comply with the rule or law, not from the commission of the crime for which he was sentenced. Gilbert, 55 F.3d at 239.

Applying Seventh Circuit law, which forecloses plaintiff's Fourth Amendment claim under Green and which rejects plaintiff's Ex Post Facto argument under Gilbert, the court hereby grants defendants' motion to dismiss both claims.